# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>EDWIN RIVERA<br><br>*Defendant(s)* | )<br>)<br>)    Case No.<br>)          6:24-mj- 1671<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __November 17, 2023__ in the county of __Osceola__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 641 | Theft of Government Property. |

This criminal complaint is based on these facts:

See affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Jessica Hurak, SA, TIGTA
_____
Printed name and title

Sworn to before me over the telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: June 21, 2024

_____
Judge's signature

City and state: Orlando, Florida

Embry Kidd, U.S. Magistrate Judge
_____
Printed name and title

STATE OF FLORIDA                                              CASE NO. 6:24-mj- 1671

COUNTY OF ORANGE

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Jessica Hurak, being duly sworn, hereby state:

### PURPOSE OF AFFIDAVIT AND AFFIANT'S BACKGROUND

1. This affidavit is submitted in support of a Criminal Complaint against Edwin RIVERA for a violation of 18 U.S.C. § 641 (Theft of Government Property). This affidavit sets forth probable cause that on or about November 17, 2023, in the Middle District of Florida, and elsewhere, RIVERA did knowingly and willfully embezzle, steal, purloin, and convert to RIVERA's use and the use of another, more than $1,000 of money and a thing of value of the United States and the United States Department of the Treasury (the "Treasury"), a department and agency of the United States, that is a $1,987,457.00 check (the "Treasury Check"), with intent to deprive the United States and the Treasury of the use and benefit of the money and thing of value.

2. I am a Special Agent with the United States Treasury Inspector General for Tax Administration ("TIGTA") in Tampa, Florida. I have been so employed since February 2024. TIGTA is the federal agency charged with protecting the integrity of the Federal tax administration by detecting and preventing fraud from occurring and by investigating allegations of criminal violations that have already occurred.

1

3. I have attended and received certification from the TIGTA training academy at the Federal Law Enforcement Training Center. Prior to becoming a TIGTA Special Agent, I was a Special Agent for the Department of Homeland Security, Homeland Security Investigations ("HSI") for 15 years. During my employment with HSI, I conducted investigations of financial crimes, including wire fraud, bank fraud, and money laundering.

4. I make this affidavit based on my experience and background as a law enforcement officer, including my experience with TIGTA and HSI, my personal participation in the investigation; and information provided by other law enforcement officers, investigators, and agency personnel. Unless otherwise stated, the information in this affidavit is either personally known to me, has been provided to me by other individuals, or is based on a review of various documents, records, and reports. Because this Affidavit is submitted for the limited purpose of establishing probable cause, it does not contain every fact known by me or the United States.

## STATUTORY AUTHORITY

5. Pursuant to 18 U.S.C. § 641, whoever knowingly and willfully embezzles, steals, purloins, or converts to their use or the use of another, more than $1,000 of money or a thing of value of the United States or a department or agency of the United States, with intent to deprive the United States or the department or agency of the use and benefit of the money or thing of value, commits a felony violation of theft of government property.

## **PROBABLE CAUSE**

6. On or about January 30, 2024, a Special Agent with the United States Postal Inspection Service (USPIS) was contacted by an attorney ("Individual 1") for Victim Company 1, an automotive supplier.

7. Individual 1 stated that on or about January 11, 2024, Victim Company 1 received two change of address notifications from the Internal Revenue Service ("IRS") showing that their alleged new address had been changed to 1000 Castle Pines Court, Reunion, Florida 34747. Individual 1 stated that the above is not the correct address for Victim Company 1, and that Victim Company 1 received notice that a $1,987,457.00 Treasury Check had been mailed to the Castle Pines address on or about November 14, 2023. The Treasury Check was issued due to an electronic filing of IRS Form 941, used to report or amend income taxes. However, Individual 1 confirmed that Victim Company 1 did not make the 941 filing to the IRS which triggered the $1,987,457 refund.

8. On or about February 12, 2024, Investigators obtained a copy of the Treasury Check, which displayed the following on the front of the check (Victim Company 1's name was on the check as the payee and has been redacted):

3



9.     Investigation revealed that the Treasury Check was deposited on or about November 17, 2023, into a Truist bank account ending in 3690 (the "Fraudulent Account") at a Truist bank branch located in Celebration, Florida. Bank documents showed that the Fraudulent Account was opened on November 1, 2023, in the name of Victim Company 1, with a $100 check deposit from "ER Construction Group LLC" of 1000 Castle Pines Court, Reunion, FL. Bank documents show the assigned "manager" of the Fraudulent Account is RIVERA with the following identifiers: phone number 407-XXX-4376, e-mail erivera67@gmail.com, address 1000 Castle Pines Court, Reunion FL. Furthermore, the signature card revealed the name and signature of RIVERA's wife.

10.    A review of photographs and video footage from Truist bank on November 17, 2023, when the Treasury Check was deposited, shows RIVERA enter the bank, go into a back office, emerge from the office, and exit the bank:

RIVERA's Driver's License Photograph:

4



Bank Footage:



5

Furthermore, a Commercial Deposit receipt from Truist Bank confirms that at that time a check in the amount of $1,987,457.00 was deposited into the Fraudulent Account:

| Truist | Commercial Deposit | | |
|---|---|---|---|
| Transaction Date / Time: | 11/17/2023/14:07 | Account Number: | 1100023733690 |
| Processing Date: | 11/17/2023 | Account Type: | Checking/Savings/Money Market |
| Cashbox Number: | 0009 | | |
| Cost Center: | 8560181 | | |
| Transaction ID: | 58 | Session Funds In: | $0.00 |
| | | Cash In: | $0.00 |
| | | Check In: | $1,987,457.00 |
| | | Session Funds Out: | $0.00 |
| | | Total Deposit Amt: | $1,987,457.00 |

⑃521133333⑃   1100023733690⑃0013⑃019874 5700⑃

11. Photographs and video footage on previous and subsequent dates shows RIVERA and his wife conducting transactions, deposits, and withdrawals, from the Fraudulent Account:

Photograph from Truist, initial account opening on November 2, 2023, showing RIVERA and his wife:



12. A forensic analysis of the Fraudulent Account resulted in the following findings:

    a. Between January 3, 2024, and February 13, 2024, funds traceable to the deposit of the fraudulently obtained Treasury Check were withdrawn from the Fraudulent Account through various means, including internet payments, wire transfers, debit card transactions, Zelle payments, ACH transactions, and counter withdrawals.

    b. Large amounts were sent from the Fraudulent Account to other accounts owned by RIVERA. For example, on January 3, 2024,

7

    $750,000.00 was transferred from the Fraudulent Account to another one of RIVERA's accounts with Truist.

  c. Thirty wire transfers were conducted between January 3, 2024, and February 14, 2024, which ranged from $1,000.00 to $131,000.00 and totaled $1,107,302.31.

  d. Many of the wire transfers were also sent to other corporations owned by the RIVERA or his wife. For example, approximately $36,000.00 was wired from the Fraudulent Account to "ER Construction," which is owned by RIVERA.

13. Law enforcement databases connected the phone number associated with the Fraudulent Account as belonging to RIVERA and listed the address of the account holder as 1000 Castle Pines Ct., Reunion, FL 34747.

14. The Osceola County Property Appraiser website confirmed that RIVERA and his wife were the registered owners of 1000 Castle Pines Court, Reunion, Florida, when the suspected fraud occurred. Additionally, law enforcement surveillance witnessed RIVERA's vehicle parked in the driveway of 1000 Castle Pines as recent as June 4, 2024.

15. A subpoena return from the State of Florida, Division of Corporations revealed that the suspected fraudulent corporation of Victim Company 1 was created on October 31, 2023. It lists the following officers for the company: Registered Agent & President Edwin RIVERA and Vice President [RIVERA's wife] with a registered address of 1000 Castle Pines Ct., Reunion, FL 34747.

16. As of on or about February 5, 2024, a fictious website for Victim Company 1 existed that was likely created by the RIVERAs. A snapshot of the website was archived by investigators by use of the Wayback Machine.[1] The archive captured a sample of digital images of how the website looked on or about Febuary 5, 2024. Under the "Contact Us" section of the website, the address listed is "1000 Castle Pines Court, Renion, FL, USA." Under the "Team" section of the website it lists RIVERA as the President and his wife as the Vice President. Although the thumbnail image of RIVERA was not captured, the image of RIVERA's wife is visible.

17. On February 8, 2024, Victim Company 1 sent Cease and Desist letters to RIVERA and his wife, which were served to their Castle Pines address via overnight UPS mail. Victim Company 1 received a confirmation of delivery of the letters. The letters demanded that RIVERA and his wife cease and desist in using Victim Company 1's name and corporate identity to commit fraud.

18. Initially when Victim Company 1 discovered the fraud, it changed its entity address on file with the IRS back to the correct address; however, on or about February 28, 2024, Individual 1 and Victim Company 1 were notified that its address had been changed back to the 1000 Castle Pines address. Individual 1 provided documentation from the IRS regarding the address change. Further, additional

---

[1] The Wayback Machine is a "digital archive of the World Wide Web founded by the Internet Archive, an American nonprofit organization based in San Francisco, California. Created in 1996 and launched to public in 2001, it allows user to go 'back in time' to see how websites looked in the past."

notices of change of address were sent to Victim Company 1 on April 15 and May 6, 2024, reflecting continued attempts to commit fraud.

19. Victim Company 1 confirmed that "Edwin Rivera" is not employed by Victim Company 1 and that he does not have any authority to interact with the IRS in any capacity on behalf of their corporation.

20. During this investigation, documents, phone recordings and information from databases were obtained from the IRS. A copy of the fraudulently filed 941 was obtained.

21. On October 5, 2023, the fraudulently filed 941 was executed electronically, signed by "Edwin Rivera" as "owner," and used phone number 978-XXX-5331. The 941 was filed using the legitimate Victim Company 1 business name and using Victim Company 1's real EIN (Employer Identification Number).

22. Between on or about October 31, 2023, and on or about November 2, 2023, three EINs were created with variations of Victim Company 1 as their business name. In my training and experience, fraudsters will create a business entity name similar to large corporations before committing fraud. By creating the same corporate name but a new EIN, a fraudster can reroute an IRS refund check simply by having the legitimate address changed to their address, obtaining the check, and cashing it into their own account due to the creation of a new EIN. If a fraudster used the legitimate company's EIN, then the check would have to be cashed in the legitimate company's bank account. Banks are less likely to question a large deposit, if the business name matches a legitimate large corporation.

23.     Further, IRS systems revealed multiple phone calls from the 978-XXX-5331 number from a male caller stating his name is Edwin RIVERA.  During most of the calls, the individual who identified himself as RIVERA claiming to be an executive of the business attempted to change Victim Company 1's address or other victim corporations' addresses to his personal address.  After successfully changing a corporation's address, RIVERA then filed fraudulent tax returns to the IRS on behalf of the legitimate companies, causing the IRS to generate tax refunds and mail them to RIVERA's address.  As part of this scheme, RIVERA and his co-conspirators appear to have obtained at least six fraudulent tax refunds for a total of $10,524,080.70.

24.     IRS records show phone calls from the 5331 number beginning as early as September 2023 and continuing until at least May 2024 in a continued effort to steal tax refund checks.  For example, in a February 15, 2024, call to the IRS in which the caller verified his address and attempted to check on the status of a fraudulent tax refund, the caller identifies himself as Edwin RIVERA, provides his date of birth, the Castle Pines address, and provides his social security number.

## CONCLUSION

25.     Based upon the facts stated herein, there is probable cause to believe that on or November 17, 2023, in the Middle District of Florida, and elsewhere, RIVERA did knowingly and willfully embezzle, steal, purloin, and convert to his use and the use of another, more than $1,000 of money and a thing of value of the United States and a department and agency of the United States, with intent to

deprive the United States of the use and benefit of the money and thing of value, in violation of 18 U.S.C. § 641.

Respectfully submitted,

Jessica Hurak
Special Agent, TIGTA

Affidavit submitted by e-mail and attested to me as true and accurate via Zoom/video conferencing consistent with the Fed. R. Crim. P. 4.1 and 41(d)(3), this  21st   day of June 2024.

Hon. EMBRY J. KIDD
United States Magistrate Judge

12